UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ROBERT A. DELSMAN, JR. <br><br> Defendant. | Case No:  C 09-1468 SBA <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** <br><br> [Docket 21] |

Plaintiff Sedgwick Claims Management Services, Inc. ("Sedgwick") is an out-of-state corporation that provides insurance claims services to various companies and their employees, including Defendant Robert A. Delsman, Jr. ("Defendant").  Defendant runs a "blog" in which he has strongly criticized the business practices of Sedgwick and its management.  In addition, Defendant has mailed postcards styled as "WANTED" posters bearing the photographs of two of Sedgwick's executives, again with critical commentary.  Sedgwick's First Amended Complaint ("Amended Complaint") alleges that Defendant engaged in copyright infringement by using the two photos.  In addition, Sedgwick alleges various state law causes of action, including defamation, based on the content expressed in the blogs.  The Court has original and diversity jurisdiction pursuant to 28 U.S.C. § 1331 and 1332, respectively.

The parties are presently before the Court on Defendant's Pro Se Motion for Summary Judgment, Improper Venue, Failure to Join Indispensible Third Party Under Rule 19.  In view of Defendant's pro se status, the Court liberally construes his motion as one to dismiss the copyright infringement claim under Federal Rule of Civil Procedure 12(b)(6) and an anti-SLAPP motion to strike under California Code of Civil Procedure section 425.16 as to the remaining state law claims. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

## I. BACKGROUND

### A. FACTUAL OVERVIEW

Sedgwick provides insurance claim management services to its customers and their employees. (FAC ¶ 8.) The Company is an Illinois corporation and has its principal place of business in Memphis, Tennessee. (Id.) David North is the Company's Chief Executive Officer ("CEO") and Paul Posey is its Chief Operating Officer ("COO"). (Id. ¶ 12.) Sedgwick's clientele includes a number of recognizable companies, including General Electric. (Id. ¶ 8.) GE hired Sedgwick to manage and administer claims for its Long-Term Disability Income Plan, which is offered through Met-Life, Inc. ("Met-Life/GE Plan"). (Id. ¶ 10.)

Defendant was previously employed by GE and purchased insurance under the Met Life/GE Plan. (Id. ¶ 11.) In or about February 2006, he submitted a claim for disability benefits. (Id.) The status of his claim is not specified in the pleadings. However, Defendant, who claims he is disabled and has been unable to work for the last three years, apparently is highly dissatisfied with Sedgwick's handling of his claim. (Def.'s Mot. at 2.) As a means of expressing his opinions regarding Sedgwick and its management, Defendant began (on an unspecified date) to publicly express his views through a web blog and a postcard mailing campaign called "Operation Going Postcard." (FAC ¶ 12-13.)

Defendant's blog is maintained at various URLs, i.e., www.Sedgwickcms.blogspot.com, www.gesupplydiscrimination.com and http://gesupplyrexeldiscrimination.com. (Id. ¶¶ 33-35.) In these blogs, Defendant allegedly posted a number of "defamatory" statements in which he accuses Sedgwick of, *inter alia*, wrongfully denying benefits to claimants, violating various laws, and accusing Sedgwick and its "minions" (whom he calls "Sedgthugs") of having committed "Sedgcrimes." (Id. ¶ 23.) In addition, Sedgwick complains that Defendant used two copyrighted photographs, headshots of CEO North and COO Posey, and superimposed them on fugitive-style "WANTED" postcards. (Id. ¶ 24.)[1] He also is alleged to have "morphed" the same two photos

---

[1] Curiously, these photographs allegedly were registered with the Copyright Office on March 19, 2009 (FAC ¶ 9), only 15 days before Sedgwick commenced this lawsuit on April 3, 2009.

1 into pictures of Adolph Hitler and Heinrich Himler, respectively, and to have sent them to
2 unspecified Sedgwick employees.  (Id. ¶ 24.)  Defendant allegedly obtained North's photo from a
3 worker's compensation conference website, and Posey's photo from a Company press release
4 announcing his elevation to COO.  (Id. ¶ 25.)
5      In February 2009, Defendant launched Operating Going Postcard, which he described in his
6 blogs as a campaign to "educate the consuming public" regarding the business practices of
7 Sedgwick.  (Id. ¶ 29.)  According to Defendant, such negative publicity was a "good way to fight
8 back against these despicable characters…."  (Id.)  On February 9, 2009, Defendant sent one such
9 postcard to CEO North.  (Id. ¶ 30.)  One side of the postcard incorporates North's picture into a
10 "WANTED" poster which is captioned:  "WANTED FOR HUMAN RIGHTS VIOLATIONS."
11 (Id.)  To the right of the photo, the text reads:  "Have you been threatened by this man or his
12 minions?  The time for change is at hand!"  (Id.)  On the other side of the postcard, the following
13 copy appears:

> Have you been terrorized, threatened and lied to by Sedgwick Claims Management Services?
> The time to act is now!
> Report these despicable activities to the US Department of Justice and the Attorney General in your state.
> Sedgwick CMS can be stopped peacefully and purposefully if enough people act now!
> Get informed!

(Id.)

     In another postcard sent to MetLife on February 19, 2009, a picture of COO Posey is superimposed on the same type of "WANTED" poster, using the same format.  (Id. ¶ 34.)  To the right of the photo the text reads:

> Tired of a pocket full of Poseys
> More Liar Lawyers ready to take your rights away for their bottom line
> Just Say No to Sedgwick's latest Ponzi Scheme

(Id.)  The copy on the opposite side of the postcard reads identically to the North postcard, as set forth above.  (Id.)

On February 9, 2009, Defendant allegedly sent a postcard to Sedgwick's Operations Manager which showed the image of a skull, accompanied by the text: "Are you a victim of Sedgwick CMS? Have you or your family been terrorized by David North and his minions? Take a stand NOW! Just say NO!" (Id. ¶ 31.) The flipside of the postcard contained the same copy as the other postcards. (Id.) Defendant sent a similar postcard to Sears on February 17, 2009. (Id. ¶ 33.)

### B.   PROCEDURAL SUMMARY

Plaintiff filed its Complaint in this Court on April 3, 2009, and an Amended Complaint on April 10, 2009, naming Delsman as the only defendant. The pleadings allege six claims for: (1) trespass to chattels; (2) copyright infringement; (3) interference with prospective economic advantage; (4) trade libel; (5) defamation and libel; and (6) unfair competition. Plaintiff's second claim for copyright infringement is the only federal claim. All other causes of action are predicated on state law.

In response to the Amended Complaint, Defendant filed a pro se motion styled as "Defendants (sic) Motion for Summary Judgment; Improper Venue; Failure to Join an Indispensible Third Party under Rule 19." (Docket 21.) Defendant's motion contains a scattershot of arguments, all of which seek the dismissal of the action. Among other things, Defendant contends that Sedgwick's complaint is a Strategic Lawsuit Against Public Participation (also known as a "SLAPP suit") intended to harass and intimidate him in response to his criticism of the Company. (Pl.'s Mot. at 3.) In addition, Defendant contends that his use of Sedgwick's photographs constitutes "fair use" under the Copyright Act, 17 U.S.C. § 107. (Id.)[2]

A court must liberally construe a pro se litigant's "inartful pleading" and motions. See Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003); Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001). Although Defendant has styled his motion as one for summary judgment, he has not accompanied his motion with any evidence or declarations. Therefore, the Court construes his motion, as it pertains to Sedgwick's second claim for copyright infringement,

---

[2] Defendant also accuses Sedgwick of discriminating against disabled persons and persons of color. (Pl.'s Mot. at 4.)

as a motion to dismiss under Rule 12(b)(6). With regard to Sedgwick's remaining five state law causes of action, the Court construes the motion as an anti-SLAPP special motion to strike under California Code of Civil Procedure section 425.16.[3]

## II.     MOTION TO DISMISS COPYRIGHT INFRINGMENT CLAIM

### A.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.   To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "In general, the inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."   Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.   Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

### B.     COPYRIGHT INFRINGEMENT

The Copyright Act confers a copyright owner with the exclusive right to reproduce a copyrighted work and to distribute copies of the work.  See 17 U.S.C. § 106(1)-(3).  "[T]o establish infringement, two elements must be proven:  (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."   Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991).  A claim of copyright infringement is subject to certain statutory exceptions, including the "fair use" exception, which provides that "the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching ..., scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.  The fair use exception "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very

---

[3] California's anti-SLAPP statute applies to state law causes of action filed in a federal court but is inapplicable to federal claims.  Bulletin Displays, LLC v. Regency Outdoor Adver., Inc., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006).

creativity which that law is designed to foster." Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1399 (9th Cir. 1997) (internal quotation marks and citation omitted).

The fair use statute sets out four factors to consider in determining whether the use in a particular case is a fair use. 17 U.S.C. § 107; Leadsinger, Inc. v. BMG Music Publishing, 512 F.3d 522, 529 (9th Cir. 2008). These factors consist of the following: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107.

"When conducting a fair use analysis, [the Court is] not restricted to these factors; rather, the analysis is a flexible one that [the Court] perform[s] on a case-by-case basis." Leadsinger, 512 F.3d at 529. These factors should be weighed together, "in light of the copyright law's purpose 'to promote the progress of science and art by protecting artistic and scientific works while encouraging the development and evolution of new works.'" Id. (citation omitted); accord Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1163 (9th Cir. 2007). Not all factors must be met in order for the Court to make a determination of fair use. Kelly v. Arriba Soft Corp., 336 F.3d 811, 822 (9th Cir. 2003) (holding that fair use was established where two of the four factors weighed in favor of the alleged infringer).

Sedgwick argues that the issue of fair use cannot be decided on a motion to dismiss, and that it should be allowed to conduct "further discovery." (Pl.'s Opp'n at 7.) However, the Ninth Circuit has held that a defendant's "assertion of fair use may be considered on a motion to dismiss, which requires the court to consider all allegations to be true, in a manner substantially similar to consideration of the same issue on a motion for summary judgment, when no material facts are in dispute." Leadsinger, Inc., 512 F.3d at 530; accord Savage v. Council on American-Islamic Relations, Inc., 2008 WL 2951281 at *4-9 (N.D. Cal. 2008) (granting Rule 12(c) motion for judgment on the pleadings based on fair use defense) (Illston, J.); Burnett v. Twentieth Century Fox Film Corp., 491 F. Supp. 2d 962, 971-72 (C.D. Cal. 2007) (granting Rule 12(b)(6) motion to dismiss based on fair use defense and dismissing copyright infringement claim).

C.   **FAIR USE FACTORS**

1. **First Factor—Purpose and Character of the Use**

The first fair use factor addresses "whether the new work merely 'supercedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning or message, in other words, whether and to what extent the new work is 'transformative.'" Campbell v. Acuff-Rose Music, 510 U.S. 569, 579-80 (1994) (internal citations omitted); 17 U.S.C. § 107(1).  Among the various forms of "transformative use" is parody, which is a "'literary or artistic work that imitates the characteristic style of an author or a work for comic effort or ridicule,…'"  Id. at 580.  Parody is "a form of social and literary criticism," it has "socially significant value as free speech under the First Amendment."  Dr. Seuss, 109 F.3d at 1400.[4]  "[T]he more 'transformative the new work, the less will be the significance of the other factors.'"  Wall Data Inc. v. Los Angeles County Sheriff's Dept., 447 F.3d 769, 779 (9th Cir. 2006) (quoting Campbell, 510 U.S. at 578-79).

Sedgwick argues that there can be no fair use where, as here, Defendant did not alter the photographs of North and Posey.  (Pl.'s Opp'n at 7-8.)[5]  This argument is misplaced.  The question of fair use does not turn simply on whether the photographs themselves were unaltered.  Rather, as the relevant jurisprudence makes clear, the salient inquiry is whether the use of the photos, *in the specific context used*, was transformative.  See Perfect 10, Inc., 508 F.3d at 1164 ("a search engine puts images '*in a different context*' so that they are 'transformed into a new creation.'") (emphasis added).  In that regard, the Ninth Circuit has consistently held that "making an exact copy of a work may be transformative so long as the copy serves a different function than the original work[.]"  Id. (image originally used for entertainment or aesthetic purposes was transformed where defendant used the same image to facilitate use of an internet browser to locate information on the

---

[4] "[E]very court to address the issue whether a defendant's work qualifies as a parody has treated this question as one of law to be decided by the court."  Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 801 (9th Cir. 2003).

[5] Sedgwick's argument is limited to the use of the unaltered photos on the postcards on the website.  (FAC ¶¶ 30, 32, 34.) It does not dispute that Defendant's morphing of the photos into Nazi leaders was transformative.  (Id. ¶ 24.)

- 7 -

1  web); Kelly v. Arriba Soft Corp., 336 F.3d 811, 816 (9th Cir. 2003) ("exact replication" of
2  protected images was fair use where used in a different context from the original); Mattel, 353 F.3d
3  at 802 (photographs of Barbie dolls "in various absurd and often sexualized positions" parodied
4  "Barbie's influence on gender roles and the position of women in society" and hence was
5  transformative); see also Nunez v. Caribbean Intern. News Corp., 235 F.3d 18, 22 (1st Cir. 2000)
6  (holding that use of unaltered pictures in conjunction with editorial commentary gave them "new
7  meaning" sufficient to transform the works into a "newsworthy" use); Leibovitz v. Paramount
8  Pictures Corp., 137 F.3d 109, 115 n.3 (2d Cir. 1998) (application of the fair use doctrine is
9  particularly apropos where the use of the work disparages the original).

10  Here, there can be no legitimate dispute that Defendant's use of North and Posey's
11  photographs was transformative. Both images originally were used by Defendant for promotional
12  reasons. (FAC ¶ 25.) Defendant, however, used the photographs as a vehicle for criticizing the
13  Company. Specifically, both photographs are superimposed on postcards that mimic "WANTED"
14  posters. Above each picture is the heading, in a large font, which states: "WANTED FOR
15  HUMAN RIGHTS VIOLATIONS." (¶ 30, 32, 34.) The copy accompanying the photographs
16  criticizes Sedgwick and its management's alleged mistreatment of claimants and questionable
17  practices, and urges the public to report any misdeeds to the U.S. Department of Justice and state
18  Attorney Generals. (Id.) When viewed in context, it is clear that Defendant used North and
19  Posey's photographs for a fundamentally different purpose than they were originally intended by
20  transforming them into a vehicle for publicizing and criticizing Sedgwick's alleged business
21  practices. In view of the above, the Court finds that the first fair use factor weighs strongly in
22  favor of fair use.[6]

23
24
25
26  [6] Given the transformative nature of Defendant's use of the photographs, the matter of whether the use was commercial is less significant. See Elvis Presley Enters., Inc. v. Passport Video, 349 F.3d 622, 628 (9th Cir. 2003). Nevertheless, the Court notes that there is no claim that
27  Defendant used the photographs for commercial gain. Rather, all of the facts presented indicate that the photographs were used as part of Defendant's overall endeavor to educate, publicize and
28  warn the public about Sedgwick. The lack of commercialism also weighs in favor of fair use.

### 2. Second Factor—Nature of Plaintiff's Work

The second fair use factor looks to the nature of the plaintiff's work. 17 U.S.C. § 107(2). Where transformative uses are involved, this factor has been described as "not ... terribly significant in the overall fair use balancing…." See Mattel, 353 F.3d at 803; Campbell, 510 U.S. at 586 (noting that the second factor was "not much help" in the parody context). Neither party makes any argument regarding this factor. The Court therefore considers the second factor to be neutral.

### 3. Third Factor—Amount of the Work Used

"The third factor asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole ... are reasonable in relation to the purpose of the copying." Campbell, 510 U.S. at 586; 17 U.S.C. § 107(3). Sedgwick briefly argues that this factor weighs against a finding of fair use because Defendant used the entire photograph of North and Posey. (Pl.'s Opp'n at 8.) This contention lacks merit.

The Ninth Circuit has held that the reuse of an entire image may be reasonable if it serves the *defendant's* intended purpose. See Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1166 (9th Cir. 2007) (use of entire image necessary to facilitate use of search engine); Kelly, 336 F.3d at 821 (same); accord Calkins v. Playboy Enters. Int'l, Inc., 561 F. Supp. 2d 1136, 1142-43 (E.D. Cal. 2008) (magazine's use of model's high school photograph for the purpose of personalizing her was reasonable since "[t]o use a lesser portion of the Photograph would have defeated [the magazine]'s] purpose for using it."). Here, Defendant used the photographs to mimic a "WANTED" posted. As such, displaying only a portion of the North or Posey photographs would have undermined that purpose. As such, the Court concludes that this factor is neutral. See Perfect 10, Inc., 508 F.3d at 1167-68; Kelly, 336 F.3d at 821; Calkins, 561 F. Supp. 2d at 1142-43.

### 4. Fourth Factor—Effect of the Use on the Potential Market

The fourth and final statutory factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Evaluation of this factor considers both the extent of the market harm caused by the alleged infringer's conduct and the adverse impact on the potential market for the original if this conduct were unrestricted. Campbell, 510 U.S. at 590. The

1 more transformative the new work, the less likely the new work's use of copyrighted materials will
2 affect the market for the materials. Elvis Presley Enters, 349 F.3d at 631. A loss in the value of
3 the copyrighted work resulting from transformative use is irrelevant to this factor. Mattel, 353 F.3d
4 at 805.

5 Sedgwick discusses none of the above considerations, and simply argues that "the fourth
6 factor weighs in [its] favor because Delsman's alteration, public display of altered photographs and
7 public distribution of the same have injured Sedgwick's potential ability to continue to use the
8 photos of its CEO and CFO (sic) for future marketing purposes." (Pl.'s Opp'n at 8.) However, the
9 relevant question is not whether the work itself has lost value, but rather, whether the secondary
10 use has usurped the commercial demand for the original. Campbell, 510 U.S. at 592. Here, there
11 is no such demand, since there is no commercial market for them. (FAC ¶ 25.) And even if there
12 were, Defendant's use of the photographs is sufficiently transformative that it would not be a
13 "substitute" for the original. Kelly, 336 F.3d at 822.

14 Moreover, the possibility that Defendant's use of the photographs has undermined
15 Sedgwick's ability to use them in the future is not remediable under the Copyright Act. As the
16 Supreme Court explained in Campbell, "when a lethal parody, like a scathing theater review, kills
17 demand for the original, it does not produce a harm cognizable under the Copyright Act."
18 Campbell, 510 U.S. at 591-92; accord Mattel, 353 F.3d at 805 ("this fourth factor does not
19 recognize a decrease in value of a copyrighted work that may result from a particularly powerful
20 critical work."); Fisher v. Dees, 794 F.2d 432 (9th Cir. 1986) ("the economic effect of a parody
21 with which we are concerned is not its potential to destroy or diminish the market for the
22 original—any bad review can have that effect—but rather whether it fulfills the demand for the
23 original. Biting criticism suppresses demand; copyright infringement usurps it."). The Court finds
24 that the fourth fair use factor favors Defendant.

25      **5.**     **Summary**

26 Taking all of Sedgwick's allegations as true, the Court finds that two of the fair use factors
27 weigh strongly in favor of Defendant and two are neutral. Defendant's uses of the photographs of
28 North and Posey are highly transformative and serve an entirely different function than originally

intended. It was reasonable for Defendant to use the entire photograph in order to evoke the image of a "WANTED" poster. His use could not have had impacted the market for the photographs because no such market is alleged to have existed. But even if it did, Defendant's use was sufficiently transformative that it could not be deemed to be a substitute for the original. Allowing Defendant to use the photographs in the context of publicly criticizing and warning the public regarding Sedgwick's business practices is precisely the type of activity the fair use doctrine is intended to protect.

At bottom, the Court finds that Defendant's use of the photographs in both their unaltered and altered format was a fair use within the meaning of the Copyright Act and GRANTS Defendant's motion to dismiss Sedgwick's second claim for copyright infringement. Because the Court finds that this claim cannot be cured by amendment, Sedgwick's second claim for copyright infringement is dismissed without leave to amend. Leadsinger, Inc., 512 F.3d at 532-33 (affirming application of the fair use doctrine and dismissal of copyright claim with prejudice where amendment would be futile).

### III. ANTI-SLAPP MOTION TO STRIKE

#### A. LEGAL STANDARD

In 1992, California enacted an anti-SLAPP statute, Code of Civil Procedure section 425.16, to provide a procedure for a court "to dismiss at an early stage nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." Sipple v. Foundation for Nat'l Progress, 71 Cal. App. 4th 226, 235 (1999). This type of nonmeritorious litigation is referred to under the acronym "SLAPP," or Strategic Lawsuit Against Public Participation. Id. The archetypal SLAPP complaint is a "generally meritless suit[ ] brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." Thomas v. Quintero, 126 Cal. App. 4th 635, 657 (2005) (internal quotations and citations omitted). "California enacted section 425.16 to provide a procedural remedy to resolve such a suit expeditiously." Dowling v. Zimmerman, 85 Cal. App. 4th 1400, 1414 (2001) (internal quotation marks and citation omitted).

When a plaintiff brings a SLAPP complaint, the defendant may move to strike the complaint under section 425.16. Cal. Code of Civ. Proc. § 425.16(f). In assessing a special motion to strike an alleged SLAPP, the trial court engages in a two-step process. "First, the court determines whether the challenged cause of action arises from a protected activity described in the statute." Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation, 158 Cal. App. 4th 1075, 1084 (2008). In that regard, "the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity." Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002). "Second, if the court so finds, it then decides whether the plaintiff has established a probability of prevailing on the merits of the claim." Maranatha Corrections, LLC, 158 Cal. App. 4th at 1084. If the plaintiff is unable to provide the factual and legal support for the challenged cause of action, the complaint should be stricken. Cal.Code Civ. P. § 425.16(b); Dowling, 85 Cal. App. 4th at 1417.

### B.   ACT IN FURTHERANCE OF PETITIONING OR FREE SPEECH RIGHTS

The anti-SLAPP statute applies to claims "arising from" speech or conduct "in furtherance of the exercise of the constitutional right of ... free speech in connection with a public issue or an issue of public interest." Cal.Code Civ.Proc.§ 425.16(e)(4). The term "public interest" has been "broadly construed." Integrated Healthcare Holdings, Inc. v. Fitzgibbons, 140 Cal. App. 4th 515, 523 (2006). There are three general categories of cases falling within subdivision (e)(4) of section 425.16: (1) the subject of the statement or activity precipitating the claim was a person or entity in the public eye; (2) the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants; and (3) the statement or activity precipitating the claim involved a topic of widespread public interest. Id. at 525. The challenged statements must have been made in a public forum and involved a matter of public interest in order for section 425.16 to apply. Wilbanks v. Wolk, 121 Cal. App. 4th 883, 895-899 (2004).

Sedgwick does not dispute that Defendant's statements were made in public forum, i.e., through his web blog and mailings. Id. Instead, it asserts that Defendant's actions were "not those of any individual furthering public interest; they are actions of an individual engaging in harassment, intimidation, defamation and trespass for the sake of pursuing a personal vendetta."

(Pl.'s Opp'n at 3.)[7] Sedgwick's conclusory assertions are belied by the pleadings. The statements in the Amended Complaint attributed to Defendant show that their purpose is to enlighten potential consumers of Sedgwick's allegedly questionable claims practices and to avoid using the company's services. (Compl. ¶ 23.) Defendant urges persons who feel they have been treated improperly by Sedgwick to express their concerns to the company and to submit reports of misconduct to state and federal law enforcement agencies. (Id. ¶ 23, 29, 30-35.) These statements are precisely the type of speech that presents a matter of public interest. See Wilbanks, 121 Cal. App. 4th at 894-95 (statements made on website accusing plaintiff brokerage firm of engaging in unethical or questionable business practices and warning public against patronizing the firm presented a matter of public concern within the purview of section 425.16); Damon, 85 Cal. App. 4th at 480 (statements in a newsletter critical of a homeowner association's manager's performance presented a matter of public concern).

As an ancillary matter, Sedgwick argues that even if Defendant engaged in protected activity, it is not seeking to restrain his behavior. (Pl.'s Opp'n at 4.) This contention is contradicted by the pleadings. In its Amended Complaint, Sedgwick expressly seeks extensive injunctive relief including, *inter alia*, an injunction "prohibiting Defendant from further defaming and libeling Sedgwick" and an injunction barring Defendant from further "offensive" mailings. (FAC at 21-22.) Moreover, Sedgwick has alleged multiple claims against Defendant in which it seeks compensatory damages in excess of $75,000, in addition to the imposition of punitive

---

[7] Sedgwick makes the unsupported supposition that Defendant has not made a prima facie showing supported by evidence that the claims alleged arise from an act in furtherance of Defendant's protected activity. (Pl.'s Opp'n at 3.) However, Sedgwick overlooks that the comparative burdens applicable to defendant and plaintiff on an anti-SLAPP motion are not the same. See Fox Searchlight Pictures, Inc. v. Paladino 89 Cal. App. 4th 294, 305 (2001). Unlike the plaintiff, the burden on the defendant is not an evidentiary one. All the defendant must do is show that "the act underlying the plaintiff's cause fits one of the categories spelled out in [section 425.16(e)]." Braun v. Chronicle Publishing Co., 52 Cal. App. 4th 1036, 1043 (1997); Navellier, 29 Cal. 4th at 94-95. Indeed, California courts have consistently held that the defendant need not *prove* that its actions are constitutionally protected. Id.; Fox Searchlight Pictures, 89 Cal. App. 4th at 305. The defendant's burden is simply to show that the anti-SLAPP statute applies, which can be accomplished by examining the specific causes of action alleged. See City of Cotati v. Cashman, 29 Cal. 4th 69, 78 (2002). Here, Defendant posits that the claims alleged are based on his public criticism of Sedgwick. In view of his pro se status, the Court liberally construes Defendant's argument as one under the "public interest" prong of section 425.16(e).

1 damages. (Id.) As such, its strains credulity for Sedgwick to assert that it "does not seek to
2 restrain" Defendant's protected expression. (Pl.'s Opp'n at 4.) The Court thus concludes a prima
3 facie showing has been made by Defendant that Sedgwick's lawsuit arises from an act in
4 furtherance of his right of petition or free speech.

5     The sole case cited by Sedgwick, Duncan v. Cohen, 2008 WL 2891065 (N.D. Cal. 2008) is
6 inapposite. In Duncan, the district court ruled that section 425.16 was inapplicable because the
7 defendant was not predicating its use of material from plaintiff's book on its right to free speech.
8 Rather, defendant claimed that it had a right to use the content based on *contractual rights* it had
9 previously acquired. Id. at *3. Consequently, the court found that there was no restraint on any
10 protected activity since none had been asserted. Id. While Defendant's papers in this case are not
11 a model of clarity, it is readily apparent that he is asserting his constitutional rights to criticize
12 Sedgwick.

13     C.    **PROBABILITY OF PREVAILING ON THE MERITS**

14     In light of the Court's conclusion above, the burden shifts to Sedgwick to demonstrate a
15 probability that it will prevail on its claims. Hall v. Time Warner, Inc., 153 Cal. App. 4th 1337,
16 1345 (2007). "In opposing an anti-SLAPP motion, the plaintiff cannot rely on allegations in the
17 complaint, but must bring forth evidence that would be admissible at trial." Ampex Corp. v.
18 Cargle, 128 Cal. App. 4th 1569, 1576 (2005). Thus, Sedgwick's burden in this regard is to make a
19 prima facie showing of facts through the presentation of evidence that would, if proved at trial,
20 support a judgment in its favor. Balzaga v. Fox News Network, LLC, 173 Cal. App. 4th 1325,
21 1337 (2009); Roberts v. Los Angeles County Bar Assn., 105 Cal. App. 4th 604, 613-614 (2003)
22 ("In assessing the probability of prevailing, a court looks to the evidence that would be presented at
23 trial, similar to reviewing a motion for summary judgment; a plaintiff cannot simply rely on its
24 pleadings, even if verified, but must adduce competent, admissible evidence."); Fashion 21 v.
25 Coalition for Humane Immigrant Rights of Los Angeles, 117 Cal.App.4th 1138, 1147 (2004) ("It is
26 well settled that in opposing a SLAPP motion the plaintiff's showing of a probability of prevailing
27 on its claim must be based on admissible evidence.").
28

Sedgwick fails to adduce any evidence to meet its burden of showing a probability of prevailing on any of its claims.  Rather, Sedgwick simply recites the elements of each of its state law causes of action and cites to various allegations of the Amended Complaint.  (Pl.'s Opp'n at 5-6.)  The conclusory allegations in Sedgwick's unverified pleading, standing alone, are insufficient to satisfy it burden of demonstrating a probability of prevailing on their claims.  See DuPont Merck Pharmaceutical Co. v. Superior Court, 78 Cal. App. 4th 562, 568 (2000) ("It would defeat the obvious purposes of the anti-SLAPP statute if mere allegations in an unverified complaint would be sufficient to avoid an order to strike the complaint."); e.g., Neville v. Chudacoff, 160 Cal. App. 4th 1255, 1270 (2008) (affirming order granting motion to strike where the defendant failed to present any evidence to show a probability of success); Kronemyer v. Internet Movie Data Base, Inc., 150 Cal. App. 4th 941, 951 (2007) (motion to strike properly granted where plaintiff failed to submit sufficient evidence to support his claims).  For these reasons, the Court GRANTS Defendant's motion to strike Sedgwick's state law claims, pursuant to section 425.16.

## IV.   CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendant's motion for summary judgment (docket 21), which the Court has liberally construed as a motion to dismiss Plaintiff's copyright infringement claim and special motion to strike the remaining state law causes of action, is GRANTED.  The Clerk shall close the file and terminate all deadlines and open matters.

IT IS SO ORDERED.

Dated: July 16, 2009                                   _____
                                                                    Hon. Saundra Brown Armstrong
                                                                    United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC. et al,

       Plaintiff,

  v.

DELSMAN et al,

       Defendant.
                                        /

Case Number: CV09-01468 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 17, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Robert A Delsman
3809 Little Fairfield Street
Eureka, CA 95503

Dated: July 17, 2009
                                  Richard W. Wieking, Clerk

                                          By: LISA R CLARK, Deputy Clerk